ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 1 8 2017

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | |
| v. | No. 4:17-MJ-584 |
| | |
| CHRISTOPHER ALLEN ARTHUR | |
| a/k/a "Lug"                                          (01) | |
| KIMBERLY RENEE BANKSTON          (02) | |
| LINDSEY PAIGE CARLSON | |
| a/k/a "Lindsey Fogle"                          (03) | |
| ANDREA SUE COKER | |
| a/k/a "Skittles"                                   (04) | |
| JEREMY LEE CRABTREE               (05) | |
| ALLEN DAVID ROGERS | |
| a/k/a "Boston"                                     (06) | |
| JONATHAN WAYNE SMOCK           (07) | |

CRIMINAL COMPLAINT

Conspiracy to Possess with Intent to Distribute a Controlled Substance
(Violation of 21 U.S.C. § 846)

Beginning in or before January 2014, and continuing until on or about April 28, 2017, in the Fort Worth Division of the Northern District of Texas, and elsewhere, defendants **Christopher Allen Arthur**, also known as Lug, **Kimberly Renee Bankston**, **Lindsey Paige Carlson**, also known Lindsey Fogle, **Andrea Sue Coker**, also known as Skittles, **Jeremy Lee Crabtree**, **Allen David Rogers**, also known as Boston, and **Jonathan Wayne Smock,** along with others known and unknown, did knowingly and intentionally combine, conspire, confederate, and agree to engage in conduct in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), namely to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance.

In violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1) and (b)(1)(B)).

I, the undersigned Complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

Criminal Complaint – Page 1

## I.      INTRODUCTION

1.      I have been a Special Agent of the DEA for approximately 18 years.  I received

basic investigative instruction at the DEA Academy located in Quantico, Virginia, and

additional continuing instruction regarding investigative techniques.  I am currently

assigned to the Fort Worth Resident Office (FWRO) of the DEA, Dallas Field Division,

working with Investigators and Officers from the Fort Worth Police Department.

2.      I have participated as a law enforcement officer in several investigations of

unlawful narcotics distribution and have conducted wiretap investigations, physical and

electronic surveillances, undercover transactions, the execution of search and arrest

warrants, debriefings of informants, and review of taped conversations and drug records.

Through my training, education and experience, I have become familiar with the manner

in which illegal drugs are transported, stored and distributed, and the methods of

payments for such drugs.  I am also familiar with some of the methods by which

narcotics traffickers communicate and code words commonly used by narcotics

traffickers.

## II.      SUMMARY OF PROBABLE CAUSE THAT A VIOLATION OF 21 U.S.C. § 846 HAS OCCURRED

3.      As part of the conspiracy, not every person named or identified in the conspiracy

knew every other person identified as being in the conspiracy.  It was their joining

together for the common purpose of possessing and distributing methamphetamine, the

nature of the scheme to possess and distribute methamphetamine, and the overlapping

among its members in possessing and distributing methamphetamine that established

their membership in this particular conspiracy. And not every member of the conspiracy

knew the details of each aspect of the conspiracy. Nevertheless, each member of the

conspiracy knew or was aware of the conspiracy's general purpose and scope, which was

to possess and distribute methamphetamine in the Northern District of Texas and

elsewhere between and among the named conspirators and others not named.

4.      As part of the conspiracy, its members had a fluid hierarchy that evolved over

time. For example, as some members were arrested or otherwise temporarily

unavailable, other members took over the receipt and delivery of methamphetamine.

5.      Since approximately 2014, the government has been investigating allegations that

**Christopher Allen Arthur**, also known as Lug, **Kimberly Renee Bankston, Lindsey**

**Paige Carlson**, also known Lindsey Fogle, **Andrea Sue Coker**, also known as Skittles,

**Jeremy Lee Crabtree, Allen David Rogers**, also known as Boston, and **Jonathan**

**Wayne Smock,** along with Candace Whitten, Phil Ishak, Leslie Owens, Alisha Feeney,

and Lesley Payne, not named as defendants herein, and others not named have conspired

together to possess methamphetamine with the intent to distribute it in the Northern

District of Texas and elsewhere.

6.      As part of the conspiracy, **Christopher Allen Arthur**, also known as Lug,

**Kimberly Renee Bankston, Lindsey Paige Carlson**, also known Lindsey Fogle,

**Andrea Sue Coker**, also known as Skittles, **Jeremy Lee Crabtree, Allen David**

**Rogers**, also known as Boston, and **Jonathan Wayne Smock,**

agreed to possess methamphetamine with the intent to distribute it, and knowingly and willfully participated in that agreement.

7.     . As part of the conspiracy, the common purpose between and among **Christopher Allen Arthur**, also known as Lug, **Kimberly Renee Bankston**, **Lindsey Paige Carlson**, also known Lindsey Fogle, **Andrea Sue Coker**, also known as Skittles, **Jeremy Lee Crabtree**, **Allen David Rogers**, also known as Boston, and **Jonathan Wayne Smock,** along with others was to possess and distribute methamphetamine in the Northern District of Texas and elsewhere.

8.     As part of the conspiracy, in general, Candace Whitten, Phil Ishak, Leslie Owens, Alisha Feeney, and Lesley Payne, and others distributed or brokered methamphetamine transactions between and **Christopher Allen Arthur**, also known as Lug, **Kimberly Renee Bankston**, **Lindsey Paige Carlson**, also known Lindsey Fogle, **Andrea Sue Coker**, also known as Skittles, **Jeremy Lee Crabtree**, **Allen David Rogers**, also known as Boston, and **Jonathan Wayne Smock,** and others**.**

9.     As part of the conspiracy, its members routinely received and delivered ounce and multi-ounce quantities of methamphetamine that they then distributed to others in the Northern District of Texas and elsewhere.

10.     As part of the conspiracy, some of the money derived from the sale and distribution of methamphetamine would be used to purchase additional quantities of methamphetamine.

III.   FACTS ESTABLISHING PROBABLE CAUSE THAT A VIOLATION OF 21
       U.S.C. § 846 HAS OCCURRED

11.   Below is a chronology of some relevant events:

    a.   On August 21, 2015, Agents/Officers with the Drug Enforcement
        Administration (DEA) conducted a non-custodial interview of Phil Ishak.

    b.   On April 14, 2016, Agents/Officers with the Drug Enforcement
        Administration (DEA) and Homeland Security Investigations (HSI)
        conducted a non-custodial interview of **Allen David ROGERS**.

12.   Co-conspirator Phil Ishak identified **Christopher Allen ARTHUR** as a

methamphetamine distributor to whom he (Ishak) and Amanda Means had on

approximately two (2) occasions supplied with one-half (½) ounce quantities of

methamphetamine, and had on another two occasions supplied with one-quarter (¼)

ounce quantities of methamphetamine.  Additionally, Ishak stated that he (Ishak) had

observed **ARTHUR** in possession of two (2) ounce quantities of methamphetamine on

approximately six (6) occasions.  Co-conspirator Candace Whitten confirmed that

**ARTHUR** was involved in distributing methamphetamine.  Specifically, Whitten said

that on approximately two (2) occasions she (Whitten) had observed **ARTHUR** in

possession of one (1) ounce quantities of methamphetamine.  Additionally, Whitten

stated that on approximately six (6) occasions she (Whitten) had observed Ishak and

**ARTHUR** together in possession of four (4) ounce quantities of methamphetamine.

13.   Co-conspirator Candace Whitten also identified **Kimberly Renee BANKSTON**

and **Allen David ROGERS** as methamphetamine distributors.

Whitten stated that she (Whitten) witnessed **BANKSTON** distribute methamphetamine for Matthew Rutledge Aka "Country". Whitten stated that she witnessed **BANKSTON** in possession of one (1) ounce of methamphetamine on ten (10) occasions. Whitten stated that on one (1) occasion, she (Whitten), **BANKSTON**, and Rutledge obtained one-half (½) kilogram of methamphetamine from Chris Nicholson. Whitten identified Jeremy Crabtree as a methamphetamine distribution partner of **BANKSTON**. Whitten stated that she (Whitten) had observed Crabtree and **BANKSTON** distribute one-half (½) ounce to one (1) ounce of methamphetamine on at least fifty (50) occasions to various customers. Whitten stated that she (Whitten) and Rutledge distributed four (4) ounces of methamphetamine every three (3) to four (4) days over a period of four (4) to five (5) months to Crabtree and **BANKSTON**. On April 14, 2016, Agents/Officers with the DEA and HSI conducted a non-custodial interview of **Jeremy Lee CRABTREE.** During the non-custodial interview, **CRABTREE** confirmed that **BANKSTON** and **Allen David ROGERS** were involved in distributing methamphetamine. Specifically, **CRABTREE** stated that he (**CRABTREE**) had witnessed **ROGERS** distribute between one (1) and two (2) ounces of methamphetamine on a daily basis, for an approximate six (6) month period. Additionally, **CRABTREE** stated that on approximately four (4) occasions in the summer of 2014, he (**CRABTREE**) observed **ROGERS** purchase eight (8) ounce quantities of methamphetamine.

14.     Co-conspirator Candace Whitten identified **Lindsey Paige CARLSON** as a methamphetamine distributor to whom she (Whitten) had distributed three (3) ounces of methamphetamine on one (1) occasion, and one-half (½) ounce of methamphetamine on twelve (12) occasions in 2015. Whitten stated that she (Whitten) and Rutledge distributed one (1) ounce of methamphetamine on twenty (20) occasions to **CARLSON** in 2015. Whitten stated **BANKSTON** and **CRABTREE** brokered methamphetamine transactions with **CARLSON**. Whitten stated that she (Whitten) had witnessed **ROGERS** distribute two (2) ounces of methamphetamine on one (1) occasion and one-quarter (¼) ounce of methamphetamine on one (1) occasion to **CARLSON**. Co-conspirator Leslie Owens confirmed that **CARLSON** was involved in distributing methamphetamine. Specifically, Owens identified **CARLSON** as methamphetamine customer and "runner" for **ROGERS**. Owens stated she had witnessed **CARLSON** conduct methamphetamine transactions with customers at a game room at the direction of and on the behalf of **ROGERS**. Owens stated that **CARLSON** was present with **ROGERS** in the office of the game room for all of the methamphetamine deliveries made by Owens to **ROGERS** as detailed above. Owens stated that **CARLSON** was also present on numerous occasions in the office of the game room when **ROGERS** received methamphetamine from additional sources-of-supply.

15.     Co-conspirator Candace Whitten identified **Andrea Sue COKER** as a methamphetamine distributor. Whitten stated that she (Whitten) had obtained one (1) ounce of methamphetamine on one (1) occasion from **COKER**.

Criminal Complaint – Page 7

Whitten stated that she (Whitten) had observed **COKER** in possession of four (4) ounces of methamphetamine on five (5) to six (6) occasions. Whitten stated that she (Whitten) had distributed one (1) ounce of methamphetamine on five (5) occasions to **COKER**. Whitten stated that she (Whitten) had witnessed **ROGERS** distribute a one-quarter (¼) ounce of methamphetamine on one (1) occasion to **COKER**. Whitten stated that she had witnessed **CRABTREE** distribute one (1) ounce of methamphetamine on two (2) to three (3) occasions to **COKER**. Whitten stated that she had witnessed **COKER** distribute one-half (½) gallon of GHB on one (1) occasion to an unknown customer. Co-conspirator Mandy Turner confirmed that **COKER** was involved in distributing methamphetamine. Specifically, Turner said that she (Turner) observed **COKER** and David Harvey in possession of eight (8) ounces of methamphetamine on two (2) occasions and four (4) ounces of methamphetamine on three (3) other occasions. In 2015, Nicholas Sides and **COKER** held David HUGHES, a.k.a. Baby Huey, at gunpoint at the House of Knives located near the intersection of I-820 and Quebec Street in northwest Fort Worth. Turner stated that it was her (Turner's) understanding that **COKER** held the gun on Hughes. Turner stated that she had this knowledge because she (Turner) had to provide **COKER** one-half (½) ounce of methamphetamine to release Hughes. Turner stated that approximately one week after paying **COKER** and Sides the one-half (½) ounce of methamphetamine, she (Turner) observed Sides and **COKER** at the America's Best Value Inn.

Turner stated that during this meeting at the America's Best Value Inn, she (Turner) witnessed **COKER** make one of her (**COKER's**) methamphetamine customers take his clothes off to prove he was not wearing a wire for the police. On that occasion, **COKER** and Sides had one ounce of methamphetamine.

16.     Co-conspirator Lance Taylor identified **Jonathan Wayne SMOCK** as a methamphetamine customer.  Taylor stated that he (Taylor) had distributed four (4) ounces of methamphetamine on one (1) occasion to **SMOCK** and Will Orozco.  Taylor stated that he (Taylor) had witnessed **SMOCK** in possession of eight (8) ounces of methamphetamine on ten (10) occasions, and four (4) ounces of methamphetamine on eight (8) to ten (10) occasions from 2015 to 2016.  Taylor stated that he had witnessed Orozco obtain four (4) ounces of methamphetamine from **SMOCK** on two (2) occasions in 2015 to 2016.  Co-conspirator Will Orozco confirmed that **SMOCK** was involved in distributing methamphetamine.  Specifically, Orozco said that on approximately two (2) occasions he (Orozco) observed **SMOCK** in possession of two (2) ounces of methamphetamine, and on one (1) additional occasion he (Orozco) observed **SMOCK** in possession of one (1) ounce of methamphetamine.  Additionally, Orozco stated that on two (2) occasions he (Orozco) purchased one-half (½) ounce quantities of methamphetamine from **SMOCK.**

17.     Based on the foregoing, the Complainant believes that probable cause exists that

**Christopher Allen Arthur**, also known as Lug, **Kimberly Renee Bankston, Lindsey**

**Paige Carlson**, also known Lindsey Fogle, **Andrea Sue Coker**, also known as Skittles,

**Jeremy Lee Crabtree**, **Allen David Rogers**, also known as Boston,

and **Jonathan Wayne Smock,**  along with others both known and unknown, did

knowingly and intentionally combine, conspire, confederate, and agree to engage in

conduct in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), namely to distribute and to

possess with intent to distribute more than 50 grams of methamphetamine, in violation of

21 U.S.C. § 846.

Brian Finney
Special Agent
Drug Enforcement Administration


SWORN AND SUBSCRIBED before me, at 9:03 am/pm, this 18th day of July
2017, in Fort Worth, Texas.

JEFFREY L. CURETON
United States Magistrate Judge

**Criminal Complaint – Page 10**